**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Case No. 1:25-CR-300-RDA** |
| | ) | |
| JAMON KANEE MURPHY, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE**

Comes Now the Defendant, Jamon Murphy, by and through counsel, pursuant to the Court's request for additional argument on the pending *Motion to Suppress Evidence* (ECF 45). *See Minute Entry (ECF 70)* at 1. The evidentiary hearing held on July 22, 2026, clarified the dispositive fact for purposes of the warrantless vehicle search: before officers searched the vehicle and located the firearm, all occupants had been removed from the vehicle and secured, or had fled the scene. No person remained inside the vehicle. No person was within reaching distance of the driver's seat. No person had immediate access to the area searched. That fact defeats the Government's principal theory under *Michigan v. Long*, 463 U.S. 1032 (1983). *Long* does not authorize a generalized evidence search for firearms whenever officers previously had safety concerns during a vehicle encounter. It authorizes a narrow protective search only when officers reasonably believe that a suspect is dangerous and "may gain immediate control of weapons" in the vehicle. *Id.* at 1049. Once the vehicle was empty and the occupants had been secured or had fled, the required justification no longer existed.

Detective Booth testified that he approached the vehicle and engaged in conversation with the individual in the rear passenger seat seeking to remove him from the vehicle. Prior to any testimony, the government moved into evidence a number of exhibits, including Booth's body cam

1

recording. *See Exhibit B* (Det. Booth body cam). At time index 3:05, another officer at the scene can be heard shouting "everybody out, hands up." At 3:13, looking over the roof of the vehicle, the driver (who the law enforcement witnesses identified as Mr. Murphy), appears to be exiting the vehicle with his hands up. At 3:46, the individual in the front passenger seat appears to take off running. Booth testified that the fleeing passenger had a hand on his waist and they were concerned he could have a gun.  At 3:37, Murphy appears outside the vehicle on the driver's side with an officer behind him. At the same time index, a woman can be seen on the driver's side behind the vehicle with a different officer next to her. She appears to have her hands in cuffs behind her. Officer Booth testified she had been in the driver's side rear seat of the vehicle. At 3:59, Booth has the rear passenger seat individual out of the vehicle and is holding his hands behind his back and then, at 4:06, handcuffs him. At 4:39, Booth begins a pat down that person. At 4:51, Murphy can be seen outside the vehicle and appears to have been handcuffed as he is being held by another officer. At 5:07, the female passenger can be seen kneeling with her back against the the back of the vehicle, hands apparently cuffed.

At time index 8:00, Murphy – who is clearly restrained outside the vehicle – asks if he can use a restroom and is told to "hold it." At 11:54, after three of the occupants have been removed from the vehicle and restrained and the fourth one has fled the scene, Booth begins searching the entire vehicle.  At 12:30, the female can be seen in cuffs and advises Booth that she had previously been patted down.  At 12:38, Booth approaches Murphy, who is in cuffs and, at this point, near the back of the vehicle. Another officer has a hand on Murphy's shoulder. At 12:45, with everyone out and away from the vehicle, Booth begins searching the area around the driver's seat. He then tells Murphy he is under arrest because Booth found a gun under the driver's seat.

Detective Rivera Diaz was the government's only other witness. Her body cam was admitted into evidence as *Exhibit C.* At 3:15, both the driver (Murphy) and the driver's side rear passenger (the female) are seen exiting the vehicle while being restrained by the police. Murphy is then thoroughly patted down. At 3:51, the front seat passenger can be observed running from the scene with Rivera Diaz giving chase.

The officers did what *Terry v. Ohio,* 392 U.S. 1 (1968) permits them to do for safety: they removed the occupants, controlled the scene, and secured the people who remained. But after that was done, the Fourth Amendment did not permit a warrantless search of an empty, police-controlled vehicle merely to see whether another weapon might be inside.

The government cannot satisfy *Long* by showing only that officers suspected a weapon might be inside the vehicle. A protective search of a vehicle is permitted only where officers possess a reasonable belief, based on specific and articulable facts, that the suspect is dangerous and "may gain immediate control of weapons" in the vehicle. *Long*, 463 U.S. at 1049.

In *United States v. Davis,* 997 F.3d 191, 197 (4th Cir. 2021), the Court held that a warrantless search was invalid where the defendant was handcuffed and not within reaching distance of the item searched. In *United States v. Buster*, 26 F.4th 627 (4th Cir. 2022), the Court rejected the Government's attempt to stretch Terry's protective-search rationale to a bag after the suspect had been handcuffed, restrained, and separated from it. The Fourth Circuit explained that a protective search is not an evidence search and "must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at 634. Once officers have secured the person and separated him from the place searched, suspicion that a weapon may be present does not itself justify a warrantless search. That limiting principle controls here. The hearing showed no reasonable possibility that Murphy or any other occupant

3

would gain access to the vehicle during the seizure.

The government's position therefore asks the Court to extend *Long* beyond its rationale. That is not permitted. Terry-based searches are "strictly circumscribed by the exigencies which justified [their] initiation." *Terry,* 392 U.S. at 26 *(1968)*. Once the occupants were separated from the car and secured, there was no exigency justifying a protective search of the car.

Respectfully submitted,

JAMON KANEE MURPHY
By Counsel


_____/s/_____
Jeffrey Zimmerman, Esq. VSB #38858
Jeffrey Zimmerman, PLLC
108 N. Alfred Street
Alexandria, VA 22314
Tel: (703) 565-1825 Fax: (703) 548-8935
Email Address: www.zimpacer.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July 2026, a true and accurate copy of the foregoing was electronically filed and served via the Court's CM/ECF system to all counsel of record.

_____/s/_____
Jeffrey Zimmerman

4